RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
RAQUEL LAZO
Assistant Federal Public Defender
Nevada State Bar No. 8540
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
Raquel_Lazo@fd.org

Attorney for Zubaid Ibrahim Al Jarmi

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-cr-277-RFB-EJY |
| Plaintiff, | |
| v. | **Sentencing Memorandum**[1] |
| ZUBAID IBRAHIM AL JARMI, | |
| Defendant. | |

On January 4, 2024, Zubaid Al Jarmi appeared before this Court and pleaded guilty to one count of interference with commerce by robbery in violation of 18 U.S.C. § 1951(a). Although Al Jarmi has never been detained in the instant case, he is being held on a state case. In the state case, Al Jarmi's probationary grant was revoked for committing the instant offense and his suspended sentence of 24 to 60 months was imposed. Consequently, Al Jarmi is currently in state custody serving an active prison term. His projected release date is June 7, 2025.

Al Jarmi now appears before this Court for sentencing. The parties disagree what the appropriate sentence should be; however, the parties agree

---

[1] Certification: This Sentencing Memorandum is timely filed.

that any sentence imposed in the instant sentence should run concurrently to the state term of incarceration.

Given that he is already serving a state term of incarceration, Al Jarmi respectfully requests that this Court <u>not</u> impose a custodial sentence here. Al Jarmi's projected state release date is more than one year away on June 7, 2025. Although he is parole eligible on September 26, 2024, his parole is not guaranteed.[2] Even assuming he is granted parole on his first eligibility date, Al Jarmi is likely to continue to remain in custody beyond his actual state release date because he has an immigration hold with a pending asylum application. Moreover, Al Jarmi has been in state custody for the past 17 months. Further incarceration does nothing to advance the goals of sentencing. If this Court disagrees and believes more custody is warranted, Al Jarmi respectfully requests (1) a variance under 3553(a), (2) a downward adjustment to account for the fact that Al Jarmi has been in state custody since his arrest on November 16, 2022, and (3) that any sentence imposed be ordered to run fully concurrent to the remaining state sentence.

**A term of custody in addition to Al Jarmi's state custodial sentence is not appropriate in this case.**

- ***Instant & Prior Robbery Offenses***

Al Jarmi committed a serious crime. Luckily, he had enough sense not to use a firearm or other weapon. The guidelines recommend a 33-to-41-month sentence. Admittedly, it is troubling that Al Jarmi was on probation (for robbery) when he committed the instant robbery. But the offense was committed out of a desire to financially help his sister and her medical needs, rather than greed or malice.

---

[2] *See* Exhibit A (NDOC Inmate Detail).

Al Jarmi's only prior conviction also happens to be for robbery.  On January 11, 2020, Al Jarmi robbed the Venetian Hotel and Casino.[3] He was arrested a few days later and was ultimately released on February 23, 2020.[4]  Al Jarmi remained out of custody on bail for 15 months without issue until he was sentenced on May 23, 2022.[5] Perhaps because he had never been in trouble before (not even an arrest), Al Jarmi's 24-to-60-month sentence was fully suspended, and he was placed on probation for three years.[6] Unfortunately, however, he was only on probation for 6 months when he committed yet another robbery, this time at Resorts World. The instant robbery naturally caused his state probation to be violated, and on March 29, 2023, the state judge ultimately imposed the suspended sentence.[7]

Just as the modus operandi was similar between the Venetian and Resorts World robberies, so too was the motive. Despite having a job as a server at a local hookah lounge, Al Jarmi faced significant and mounting financial stress in providing for his sister back in Jordan.[8] He did not do it to enrich himself. He

---

[3] PSR at ¶ 34.

[4] *Id.*

[5] *Id.* The PSR indicates that he was remanded to custody on July 15, 2020, and released that same day. It is unclear why he would have been remanded. Nonetheless, it appears there were no issues while he remained out on bail.

[6] *Id.*

[7] *Id.* Although it was defense counsel's desire to proceed with the federal case first, the state revocation proceeded first. Consequently, the imposition of the suspended sentence causes Al Jarmi to have three criminal history points (placing him in a criminal history category II) instead of one criminal history point (placing him in a criminal history category I). His guideline range therefore increased from 30 to 37 to 33 to 41 months.

[8] During his presentence investigation interview, Al Jarmi chose not to go into detail regarding his sister's issue to protect her privacy. Rather, he simply relayed that she relies on him emotionally and for her financial needs. PSR at ¶ 49.

did not do it to gain clout or prominence amongst peers. He did not do it with the intent of harming others.

Al Jarmi is a beloved brother and son. His entire immediate family resides in Amman, Jordan.[9] Al Jarmi relocated to the United States in 2017 on a student visa and ultimately applied for asylum in 2018.[10] Al Jarmi's motivation to come to the United States was in large part due to the struggles and pressure he encountered growing up in a strict, abusive, and religious household.[11] Al Jarmi's decision to leave his country strained his familial relationships.[12] Nevertheless, his family is aware of the instant offense and remain supportive of him.[13]

- ***Post Offense & Deterrence***

Since his arrest on this case nearly 1 ½ years ago, Al Jarmi has reflected on his crime and how he intends to move forward when he is released. Notably, he accepted responsibility here without unnecessary delay. He has never served a single day in custody, so adapting has had its challenges. Since he has been in state custody, he has tried his best to avail himself of as much programming as possible. He has also spent most of his time reflecting on what life looks like after his release. To that end, Al Jarmi is trying to enlist the assistance of an immigration clinic or attorney that can help him with his pending asylum application. He knows it will be a longshot, but he intends to try.

---

[9] PSR at ¶ 43.

[10] *Id*. at ¶ 45. ICE reports that Al Jarmi entered into the United States on an asylum application. *Id*. at ¶ 47. Al Jarmi claims he came in via a different port than noted by ICE and entered with a student work visa. In fact, prior to physically immigrating to the United States, he had secured employment at the Holiday Inn with the student work visa. *Id*. at ¶ 69.

[11] *Id*. at ¶ 44.

[12] *Id*. at ¶ 43.

[13] *Id*.

At just 27-years-old, Al Jarmi is still young enough to turn his life around. He is very intelligent and resourceful. He has skills and is employable. He was easily able to integrate into American culture and find a community that accepted him. Even if he is unable to stay in the United States, despite the challenges he might face in Jordan, he has a family and community that think highly of him and are ready to support him upon his release. He has accepted responsibility for his decisions and is committed to successfully completing his time in custody without incident.

24 months is the minimum Al Jarmi must serve before he even becomes eligible for parole at the state. The past 17 months in custody, particularly for someone who has never served time in custody, should adequately deter him from future robberies or any other criminal conduct for that matter. It is sufficient punishment for both the state and federal case, considering that instant robbery is what caused him to be revoked. Upon his release, Al Jarmi is doubly deterred with dual supervision. In addition to a term of supervised release here he will presumably also be subject to supervision when he is paroled.

- ***Conclusion***

Accordingly, for all the stated reasons, a variance under 3553(a) is appropriate. Should this Court feel that custodial time beyond the state term is warranted, Al Jarmi respectfully requests this Court still consider a variance from the guidelines given his lack of criminal history, motivation for committing the crime, and likely continued custody and immigration and probable deportation. As stated above,[14] had he not been forced to resolve the state case first, his low end on this case would have been 30 months. As such, Al Jarmi requests this Court consider a variance from 30 months.

---

[14] *See* fn. 7.

Moreover, at a minimum, this Court should consider a downward adjustment (or variance) to account for the fact that Al Jarmi has been in state custody since his arrest on November 16, 2022. Since his arrest, Al Jarmi has served 17 months to date on the state case (and will serve approximately 5 months more before he is parole eligible).[15] Accounting for the state time he has already served since his arrest, Al Jarmi will have a balance here of 13 months at the time of sentencing[16] and approximately 6 months if he makes his first parole.[17]

Finally, for all the reasons stated above and as recommended by the parties, any additional sentence imposed should be ordered to run fully concurrent to the remaining state sentence.[18]

---

[15] At the time of his state sentencing, Al Jarmi had approximately 1 month credit for time served awarded to him by the NDOC. Hence, his state sentence technically commenced September 27, 2022. *See* Exhibit A.

[16] 30-months on the low end of the guidelines range (assuming a criminal history category I had the state case been resolved after the federal case) less 17 months served in state custody since his arrest leaves a balance of 13 months.

[17] 30-months on the low end of the guidelines range (assuming a criminal history category I had the state case been resolved after the federal case) less 24 months total served in state custody since his arrest leaves a balance of approximately 6 months.

[18] In the case where a defendant is serving an undischarged supervised release revocation sentence—as Al Jarmi is here—Application Note 4(C) recommends that the instant sentence run consecutively to the revocation sentence. U.S.S.G. § 5G1.3(d), Application Note 4(C). However, this recommendation is not binding, and must give way to the multi-factorial, discretionary analysis called for by Application Note 4(A), 18 U.S.C. § 3584(b), and § 3553(a)'s governing consideration that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the [purposes of sentencing]." 18 U.S.C. § 3553(a); *see also United States v. Chavez*, 611 F.3d 1006, 1010 (9th Cir. 2010) (explaining that § 3553(a)'s parsimony clause expresses "an overarching principle [that] necessarily informs a sentencing court's consideration of the entire constellation of section 3553(a) factors" (alteration in original, quotation marks omitted)).

DATED this 9th day of April 2024.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

By:  /s/ Raquel Lazo

RAQUEL LAZO
Assistant Federal Public Defender
Attorney for Zubaid Ibrahim Al Jarmi

### Index of Exhibits

| No. | Document |
| --- | --- |
| A | NDOC Inmate Detail |